# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **TRINETTE BARFIELD** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 C 1518 |
| | ) | |
| v. | ) | |
| | ) | |
| **PATRICK DONAHOE**, Postmaster General of the United States Postal Service | ) ) ) ) | Magistrate Judge Daniel G. Martin |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Trinette Barfield ("Plaintiff" or "Barfield") has brought this action against Defendant Patrick Donahoe ("Defendant"), the Postmaster General of the United States Postal Service, for employment practices that she claims violated the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*. The case was initially assigned to District Judge Ruben Castillo. The parties then consented to proceed before this Court for all purposes, including an entry of final judgment. On June 10, 2014, Defendant brought the instant Motion for Summary Judgment. Having carefully reviewed the parties' arguments, the Court finds that the motion [25] is granted in part and denied in part for the reasons discussed below.

## Background

Prior to her removal in 2012, Trinette Barfield worked as a mail processor for the United States Postal Service at the Carol Stream (Illinois) Processing and Distribution Center. Her job included starting and stopping machines, culling non-processable items, and sweeping the mail from various bins. Barfield concedes that she was subjected to

several disciplinary actions related to her work attendance. These include a September 2010 warning letter, and two subsequent multi-day suspensions.[1]

Starting on September 9, 2011, Barfield stopped coming to work at all. She claimed that she was incapacitated. In support, Barfield submitted a series of medical notes from Dr. B. Madoori dated September 9, September 20, October 21, November 4, and December 6, 2011. Each stated that Barfield was "totally incapacitated" and could not work prior to a date stated in each of the medical slips. (Def.'s Ex. 5). The last of the notes indicated that Plaintiff could not return to work before December 15, 2011. None of Dr. Madoori's statements indicated what the basis for the disability was.

On December 23, 2011, supervisor Leroy Patterson issued a Letter of Intent to Barfield. The letter noted that Plaintiff had not submitted anything supporting her alleged inability to work from December 15, 2011 to the date of the letter's issuance. Patterson informed Barfield that she was therefore absent without official leave ("AWOL"), and was required to deliver acceptable medical documentation within five days. A pre-disciplinary interview was scheduled for January 6, 2012. Patterson further told Barfield that disciplinary actions could include removal from her position. The removal would become

---

[1] The Court's task in assessing these and other facts has been hampered by Defendant's date and record citations. Defendant claims, for example, that Barfield's last suspension was for fourteen days beginning on November 1, 2012. That is clearly wrong, as Defendant issued a removal notice to Barfield nine months earlier in January 2012. Defendant supports its claim by citing the Letter of Intent issued on December 23, 2011. (Def.'s Ex. 4). However, that letter does not refer to any prior disciplinary actions. Defendant's reply brief does not fare much better. Defendant claims that Barfield told a supervisor on February 1, 2011 that she was depressed by the death of her nephew on October 6, 2011. This places the nephew's death after Barfield's reference to it. Defendant also states that the document that triggered this suit – the notice of removal – was issued on January 17, 2011. The correct year is 2012.

effective on February 18, 2012, as provisions under Barfield's collective bargaining agreement required that she remain on the payroll pending any grievance process that might ensue.²

Barfield did not attend the disciplinary interview. Instead, she submitted a disability certificate from Dr. Madoori dated January 3, 2012, stating once again that she was "totally incapacitated" and unable to work from December 15, 2011 through January 10, 2012. For the first time, Dr. Madoori identified the sources of her disability as anxiety, depression, and hypertension. The certificate also affirmatively stated for the first time that Plaintiff would be able to return to work on a specific date – January 10, 2012. (Def.'s Ex. 5). The certificate was delivered on January 15, one week after the scheduled disciplinary interview, and over two weeks after Patterson's due date of December 28, 2011. On January 24, however, Dr. Madoori revised his opinion and stated that Barfield could return to work without any restrictions on January 25. He changed his mind again on January 27, stating that she could resume unrestricted work on January 30. Undeterred by these multiple revisions, Dr. Madoori issued one final disability certificate on February 1 that declared that Plaintiff would be able to return to work on February 13, 2012.

By that point, Defendant had already issued a removal letter to Barfield on January 17, 2012. (Def.'s Ex. 6). The letter charged her with being AWOL and failing to provide

---

² Barfield does not appear to have been conclusively terminated from her position due to the collective bargaining agreement. (Def.'s Statement of Facts at ¶ 16). However, neither party is very clear on that issue. On July 1, 2013, an arbitrator found that Defendant's purported grounds for removing Barfield from her position were invalid and ordered that Barfield be re-instated without back pay. (Pl.'s Ex. 4). The arbitrator concluded that Barfield failed to submit the appropriate medical documentation in a timely manner. But she declined to uphold the removal on that ground because doing so "would elevate form over substance." (*Id.* at 9).

3

medical documentation in accordance with the Postal Rules and Regulations. The AWOL period included 72 hours starting on December 16 through December 27, 2011, and 56 hours from December 30, 2011 through January 8, 2012. The letter also noted that, as of January 10, Barfield had not provided any medical excuse for her last period of absence. Barfield subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After receiving her right to sue letter, she initiated this action against Defendant.

## **Legal Standard**

Summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Such a fact issue exists only where a rational trier of fact could find for the nonmoving party. *Id*. at 324. The evidence, together with all reasonable inferences that can be drawn from it, must be viewed in the light most favorable to the nonmoving party. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

The nonmoving party cannot overcome a summary judgment motion by relying on unsubstantiated facts or by resting on its pleadings. *See Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Instead, the party that bears the burden of proof on an issue must demonstrate by means of admissible evidence that a genuine issue of material fact exists on a particular issue that requires a trial. *Id*. A court neither weighs conflicting evidence nor resolves factual disputes in deciding whether summary judgment

4

is appropriate. *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

## **Discussion**

The Rehabilitation Act obligates all recipients of federal funds to accommodate employees with disabilities. 29 U.S.C. § 791(b); *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). Courts look to the provisions of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, to determine if the Rehabilitation Act has been violated. The ADA provides two categories of claims – failure to accommodate and disparate treatment. *Basith v. Cook County*, 241 F.3d 919, 926-28 (7th Cir. 2001). A different analytic framework applies to each type of claim. A disparate treatment allegation is subject to direct evidence or, barring its availability, to the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 U.S. (1973).

This standard does not apply to an accommodation claim. *Lenker v. Methodist Hosp.*, 210 F.3d 792, 799 (7th Cir. 2000) (stating that "the burden-shifting method of proof is both unnecessary and inappropriate" for reasonable accommodation claims). A plaintiff alleging that she was denied reasonable accommodation must show that (1) she is a "qualified person" with a disability, (2) the defendant was aware of the disability, and (3) the defendant failed to provide a reasonable accommodation. *Gratzl v. Off. of the Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010) (internal quotes and citation omitted). The Act does not prevent an employer from considering an employee's disability; it only prohibits discrimination based solely on the disability. *Knapp v. Northwestern Univ.*, 101 F.3d 473, 482 (7th Cir. 1996).

### A. Disparate Treatment

Barfield's Complaint is largely based on allegations that Defendant failed to provide a reasonable accommodation. *See* Complaint at ¶ 6. However, the EEOC's lengthy agency decision analyzed her discrimination charge as a disparate treatment allegation.[3] The EEOC concluded that Barfield's claim could not survive a burden-shifting analysis because Defendant provided a legitimate, non-discriminatory reason for its employment decision, and Barfield was unable to identify a similarly-situated person who was treated differently. *See id.* at Ex. A.

Defendant's motion addresses Barfield's allegations under the frameworks of both reasonable accommodation and disparate treatment. For her part, Barfield only responds by discussing the reasonable accommodation issue. Her silence on disparate treatment waives any argument she may have on that claim. The Court agrees with the EEOC's analysis that Barfield has not identified a similarly-situated employee. Moreover, she does not even claim that Defendant's purported reasons for its actions were a pretext for a discriminatory animus. Thus, insofar as disparate treatment is part of Barfield's Complaint, Defendant's motion is granted on that claim.

### B. Reasonable Accommodation

The more serious issue is whether Barfield was denied a reasonable accommodation. As the party with the burden of proof at trial, Barfield must demonstrate that (1) she is a "qualified person" with a disability, (2) Defendant was aware of the disability, and (3) Defendant failed to provide a reasonable accommodation. *Gratzl*, 601

---

[3] The charge of discrimination itself is not part of the record.

F.3d at 678.

The first element requires a showing both that Barfield had a disability and that she was a qualified individual. Barfield cites her own affidavit testimony as evidence that she was disabled from hypertension and mental stress that caused her to experience dizzy spells, erratic blood pressure, chest pains, faintness, retinal problems, and difficulties in standing, breathing, sleeping, and concentration. None of this information was available to Defendant during the relevant time period. Dr. Madoori's notes do not mention any of Barfield's alleged symptoms, and only the January 3, 2012 disability certificate cites the diagnoses of anxiety, depression, and high blood pressure.

Nevertheless, the Court is required to draw all inferences in Barfield's favor at this stage. Her affidavit, though self-serving by nature, is admissible for summary judgment purposes. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). A reasonable fact finder could conclude that her statements, combined with Dr. Madoori's multiple notes stating that Barfield was "totally incapacitated and unable to work," are enough to establish a disability. Defendant does not seriously argue to the contrary in its motion, though it puts up a greater fight in the reply. A fact finder could also conclude that Defendant was aware of Barfield's alleged disability in light of the multiple medical notes that she submitted in the fall of 2011 and early 2012.

The more troubling question is whether Barfield was "otherwise qualified" to perform her job duties. Barfield must satisfy two criteria to meet this standard. First, she must have the skill, experience, and paper qualifications that the employer expects for the position. *Brumfield v. City of Chicago*, 735 F.3d 619, 632 (7th Cir. 2013). Defendant does not dispute that Barfield meets this criterion. Second, she must also be able to perform the

7

job's essential functions with or without a reasonable accommodation. Disabled employees who can work without accommodations do not have a claim under the ADA or the Rehabilitation Act. "Thus, an employer's accommodation duty is triggered only in situations where an individual who is qualified on paper requires an accommodation in order to be able to perform the essential functions of the job." *Id*. The question of whether an individual is "otherwise qualified" is determined as of the time of the adverse employment decision. *Duda v. Bd. of Educ. of Frankline Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1059 (7th Cir. 1998); *Zieba v. Showboat Marina Casino Psp.*, 361 F. Supp.2d 838, 841 (N.D. Ind. 2005).

Common sense dictates that Barfield must also have requested an accommodation before any duty on Defendant's part was triggered. *See Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000) ("[T]he standard rule is that a plaintiff must normally request an accommodation before liability under the ADA [or Rehabilitation Act] attaches.") (citing cases). The record is clear that Barfield never explicitly asked for an accommodation prior to the January 17, 2012 notice of removal. Certainly, she did not notify Defendant of her need for an accommodation at the January 6, 2012 pre-disciplinary interview because she did not show up for it. Barfield claims that she met with supervisors Pouncy and DeLeon in February 2012 when she asked to be placed on light duty work for a few weeks. She concedes, however, that this request was only intended to accommodate an injured finger, not the disabilities that had required her to be absent from work since September 2011. As Barfield testified, she was prepared to return to work but needed light duty for a short time period "because it was something else going on other than the anxiety and the depression." (Def.'s Ex. 2 at 39).

Barfield now argues that Dr. Madoori's medical notes put Defendant on notice that she needed an accommodation. She further claims that this was enough to shift responsibility to Defendant for engaging in discussions with her about her disability.[4] An employer may (but does not always) have a duty to begin some form of dialogue with a disabled employee about possible accommodations. That process need not be formal. The implementing regulations only state that "it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3).

Unfortunately, both parties overlook that the situation can be more uncertain when, as here, an employee suffers from emotional problems. Depression and anxiety may make it more difficult for an employee to engage in meaningful communications with her employer. *See Bultemeyer v. Fort Wayne Comm. Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996). "An employer cannot always expect an employee with a mental illness to know that he must specifically say 'I want a reasonable accommodation.'" *Jovanovic*, 201 F.3d at 899. When that is the case, an employer has a duty to meet the employee half way. *Bultemeyer*, 100 F.3d at 1285. Even when mental illness is not present, moreover, good faith and reasonableness are required by both the employee and the employer:

> No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the [interactive] process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not

---

[4] Defendant claims that Barfield cannot even question whether it was obligated to begin the interactive process because her Complaint does not raise the issue. Defendant has not cited any authority showing why the notice pleading standards of Rules 8 and 9 would require Barfield to have done so.

> acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996).

This standard persuades the Court that both parties are at fault in this case. Barfield made no attempt to tell Defendant what the nature of her disability was during 2011. There is no reason to believe that Defendant knew that she suffered from depression, anxiety, dizziness, or any of the other symptoms that she identifies in her affidavit. Even if depression made it difficult for Barfield to communicate with her employer, Defendant had no basis for knowing that fact because it did not learn of her depression before January 15, 2012. "[A]n employee who fails to uphold her end of the bargain – for example, by not clarifying the extent of her medical restrictions – cannot impose liability on the employer for its failure to provide a reasonable accommodation." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 840 (7th Cir. 2012) (internal quotes and citation omitted).

On the other hand, Barfield's extended absence from work, together with her physician's numerous – and completely unambiguous – messages that she was "totally disabled" should have put Defendant on notice that something was amiss. The ADA and Rehabilitation Act do "not require clairvoyance." *Hedberg v. Ind. Telephone Co.*, 47 F.3d 928, 934 (7th Cir. 1995). But a reasonable employer could be expected to inquire into an unidentified disability whose unspecified symptoms allegedly prevent an employee from coming to work for months at a time. The record does not suggest that Defendant expressed any concerns over the issue prior to the December 23, 2011 Letter of Intent.

The fact that Dr. Madoori said that Barfield was disabled and could not perform her

10

job duties does not mean that Defendant had no obligation to discuss accommodations with Barfield. Disability itself is not an automatic bar to effective work. That is the point of the accommodation requirement – to allow an otherwise disabled employee to perform her essential work functions. There is no evidence that Dr. Madoori considered how an accommodation would affect Barfield's work capacity. Without asking, Defendant had no way of knowing at the relevant time whether or not an accommodation would have permitted Barfield to take up her job duties. "An employer must make a reasonable effort to explore the accommodation possibilities with an employee." *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998). Defendant did not do so here. That does not mean that Barfield fulfilled her obligations on this issue. For summary judgment purposes, however, the analysis cannot end based on Defendant's claim that it never knew that she required an accommodation.

Defendant argues that the issue of accommodation notice is essentially moot because Barfield conceded in her deposition testimony that no modification of her job duties would have made it possible for her return to work from September 2011 through February 2012. (Def.'s Ex. 2 at 34). Thus, Defendant contends that any discussion between the parties would have been useless because Barfield concedes that no reasonable accommodation could have been fashioned. By definition, a reasonable accommodation is one that "will enable the disabled person to work." *Vande Zande v. Wis. Dept. of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995).

The Court disagrees. Barfield's basic claim is that she implicitly made accommodation requests in the form of Dr. Madoori's medical notes. As the Court understands it, Barfield contends that she was essentially asking for an accommodation

in the form of medical leave *from* work, not job modifications that would have permitted her to return to active duty. Courts in many jurisdictions have found that medical leave can be an appropriate accommodation under the ADA. *See*, *e.g.*, *Basith*, 241 F.3d at 932; *Weigel v. Target Stores*, 122 F.3d 461, 464 n.2 (7th Cir. 1997); *see also Criado v. IBM Corp.*, 145 F.3d 437, 443 (1st Cir. 1998). The reasonableness of medical leave is based on "the facts available to the decision-maker at the time of the employment decision." *Amadio v. Ford Motor Co.*, 238 F.3d 919, 928 (7th Cir. 2001).

Defendant responds to this line of reasoning by arguing that a multi-month medical leave is inherently unreasonable under the ADA. The Court agrees that such extended leave is not required by the ADA or the Rehabilitation Act. *See*, *e.g.*, *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) ("Inability to work for a multi-month period removes a person from the class protected by the ADA."); *Jovanovic*, 201 F.3d at 899-900 ("Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job."); *Bluestein v. Central Wis. Anesthesiology, S.C.*, 986 F. Supp.2d 937, 947 (W.D. Wis. 2013) (finding that a request for four months of leave was not reasonable); *Jackson v. Ill. Dept. of Human Servs.*, 2011 WL 4501394, at *4 (N.D. Ill. Sept. 28, 2011) (finding that a two-month leave was unreasonable).

That said, Defendant's argument does not address what is really at issue in this case. Defendant assumes the relevant point involves Barfield's lengthy absence from work. The problem is that Defendant never told Barfield that her removal was based on that (admittedly long) absence. The December 23, 2011 Letter of Intent that notified her

12

of the pending disciplinary hearing does *not* complain of her absence from work prior to December 15, 2011. In fact, it concedes that Barfield submitted proper medical documentation for her absences through that date. The letter's only point of complaint is that Barfield had been AWOL beginning on December 15, 2011. The January 17, 2012 removal notice underscores the issue by stating that Barfield was impermissibly AWOL for a total of 128 work hours starting on December 16, 2011. This amounts to 16 work days. It is that time frame – not the earlier, and far more extensive, period that Defendant cites – that Defendant said it was relying on in the removal letter to terminate Barfield.

Thus, Defendant has not shown how its actions were based on Barfield's earlier requests for leave. Insofar as Dr. Madoori's notes can even be seen as requests for medical leave, Defendant's actions strongly suggest that it granted them by continuing Barfield's position as long as the doctor's notes kept coming in. Presumably, Defendant would have kept doing so had Barfield submitted another note for the period after December 15. The issue, after all, was not that Barfield had simply been absent, but that she failed to submit timely notes from Dr. Madoori. Defendant has not explained how it can complain at this point that Barfield's need for leave was unreasonable when it did not raise any concern over that issue at the time.

An employee who requires something less than extensive prospective leave at the time of her termination may be able to perform her essential job duties for ADA or Rehabilitation Act purposes. *See Owens v. Quality Hyundai*, 2007 WL 495248, at *3 (N.D. Ill. Feb. 15, 2007). Defendant does not address the issue of short-term leave at all. Drawing all inferences in Barfield's favor, the Court finds that the reasonableness of Barfield's post-December 15, 2011 accommodations presents an issue that is not

13

appropriate for summary judgment. It is true that "[n]ot working is not a means to perform the job's essential functions." *Byrne*, 328 F.3d at 381. *See also Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) ("The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual."). That said, "[t]ime off may be an apt accommodation for intermittent conditions." *Byrne*, 328 F.3d at 381.

The Court does not find that Barfield was a qualified individual for purposes of the Rehabilitation Act. However, Defendant's failure to address the time frame it relied on for removing Barfield makes it impossible to conclude as a matter of law that she was not a qualified individual or that her request for leave was unreasonable. That requires the Court to deny Plaintiff's motion [25].

ENTER:

_____
Daniel G. Martin
United States Magistrate Judge

DATE: September 17, 2014.